UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

N.G.B., *individually*, and N.G.B., *on behalf of J.B., a
child with a disability*,

                Plaintiff,

        -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendant.

------------------------------------------------------------------X

21-cv-11211 (LJL)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _03/30/2023__

LEWIS J. LIMAN, United States District Judge:

      Plaintiff N.G.B. ("Plaintiff"), by and through her attorneys Cuddy Law Firm, PLLC

("CLF"), and on behalf of her minor child J.B., filed this action seeking attorneys' fees and costs

under the fee-shifting provisions of the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1415(i)(3), against the New York City Department of Education ("DOE" or

"Defendant"). Dkt. No. 1. Plaintiff has moved for summary judgment seeking $44.090.04 in

fees and costs. Dkt. Nos. 14–15, 40-1. For the following reasons, the motion is granted in part

and denied in part.

## BACKGROUND

      The following facts, taken from Plaintiff's Rule 56.1 Statement and the documents

attached to the parties' declarations, Dkt. Nos. 15–16, 18, 37, are undisputed unless stated

otherwise.

      J.B. is a child with a disability as defined by the IDEA. Dkt. No. 18 ¶ 2. N.G.B. is the

parent of J.B. *Id.* ¶ 3. N.G.B. is the prevailing party in an administrative action under the IDEA.

*Id.* ¶¶ 37–39. On December 26, 2019, N.G.B., through CLF filed a due process complaint

("DPC"), alleging that DOE failed to provide J.B. a free appropriate public education ("FAPE") for the 2019–2020 school year. *Id.* ¶¶ 8–9; Dkt. No. 16-1. Specifically, CLF alleged that J.B.'s parent had unilaterally placed J.B. in the Gersh Academy ("Gersh") for the 2019–2020 school year after DOE had failed to timely issue a school location letter; CLF sought an order directing DOE to pay tuition and related costs for J.B. to attend Gersh including related services and transportation and to pay any costs necessary for Gersh to provide parent counseling and training ("PCAT"). Dkt. No. 16-1 at ECF p. 3; Dkt. No. 18 ¶ 10(b), 10(c).

Impartial Hearing Officer ("IHO") Israel Wahrman was appointed to hear the case, which was given case number 191804. Dkt. No. 18 ¶¶ 11–12. Proceedings before the IHO lasted from December 2019 until March 19, 2021. *Id.* ¶¶ 12–35. DOE presented Plaintiff a partial resolution agreement dated January 21, 2020, resolving certain but not all issues raised as part of the impartial hearing request, including (i) making J.B. available for an evaluation and class observation; (ii) making N.G.B. and a teacher available for certain assessment tools; (iii) having N.G.B. submit an after-school/home service ABA progress report; and (iv) holding a new Individualized Education Program meeting within twenty school days from the last completed assessment. *Id.* ¶¶ 13–14; Dkt No. 16-3. The proposed partial resolution did not address tuition, transportation, PCAT, or other costs associated with J.B.'s 2019–2020 attendance at Gersh nor did it address any of N.B.G.'s attorneys' fees and costs in connection with the matter. Dkt. No. 18 ¶¶ 16–17.

IHO Wahrman convened short telephonic prehearing conferences on March 4, 2020, and May 18, 2020, during which the parties discussed that they were in settlement discussions. *Id.* ¶¶ 18–19; Dkt. Nos. 16-4, 16-5. The on-the-record portion of each conference lasted no more than four minutes. Dkt. Nos. 16-4, 16-5.

A third hearing was held on July 16, 2020.  Dkt. No. 18 ¶ 20; Dkt. No. 16-6.  Benjamin

Kopp ("Kopp"), of CLF and acting for Plaintiff, stated that he had not received a response with

respect to settlement from DOE's settlement attorney for months and that Plaintiff was becoming

concerned.  Dkt. No. 16-6 at ECF p. 3.  After stating that he did not want the proceeding

"dragging on perpetually," IHO Wahrman set the matter down for a hearing on September 16,

2020, and, at Plaintiff's request, set a date of September 2, 2020, for Plaintiff to make a motion

for summary judgment and a date of September 9, 2020, for DOE to respond.  *Id.* at ECF pp. 3–

4.

On September 1, 2020, CLF submitted the requested letter brief for summary judgment.

Dkt. No. 18 ¶ 22; Dkt. No. 16-7.  The three-page letter argued that Plaintiff was entitled to

reimbursement for the unilateral placement at Gersh based on the three factor *Burlington/Carter*

test.[1]  CLF relied on a Corrected Findings of Fact and Decision ("FOFD") that Plaintiff had

received in an earlier proceeding concluding that J.B. had been denied a FAPE for the 2017–

2018 school year and ordering that DOE locate an appropriate state-approved non-public school

for J.B.  CLF argued that DOE had failed timely to locate such a school and to provide other

required services and thus that J.B. was being denied a FAPE for the 2019–2020 school year.

Dkt. No. 16-7 at ECF p. 2.  CLF also noted that J.B. had been attending Gersh for the school year

preceding N.G.B.'s unilateral placement and it argued that the school continued to be an

appropriate placement and that the equities favored Plaintiff because Plaintiff had given DOE

notice of the unilateral placement.  *Id.* at ECF pp. 2–3.  DOE submitted an opposition on

---

[1] A parent is entitled to funding for unilateral placement if she establishes: (1) the school district
failed to provide the student a FAPE; (2) the program selected by the parent is appropriate; and
(3) equitable considerations support the parent's claim.  *See Florence County Sch. Dist. Four v.
Carter ex rel. Carter*, 510 U.S. 7, 12–13 (1993); *School Committee of Burlington v. Dep't of
Educ. of Mass.*, 471 U.S. 359 (1985).

September 8, 2020, with a cross-motion to dismiss.  Dkt. No. 18 ¶ 23; Dkt. No. 16-8.  DOE's opposition noted that Plaintiff did not submit any affidavit testimony in support of its motion and argued that Plaintiff had not submitted any documentary evidence as to the appropriateness of the program at Gersh.  Dkt. No. 16-8 at ECF p. 3.

IHO Wahrman held a hearing on September 16, 2020, on the motion for summary judgment.  Dkt. No. 18 ¶ 24; Dkt. No. 16-9.  The hearing lasted just under one hour.  Plaintiff submitted an affidavit of the parent and of the assistant principal at Gersh for the 2018–2019 school year, Karen Tarricone (the Tarricone affidavit).  Dkt. No. 16-9 at ECF p. 16.  At the conclusion of the hearing, IHO Wahrman denied the motion for summary judgment and the cross motion made by DOE to dismiss and scheduled a factual hearing.  *Id.* at ECF pp. 26–27.  DOE stated that it wanted to cross-examine Plaintiff's two witnesses—the parent and Tarricone, *id.* at ECF p. 28, and Plaintiff's counsel stated its intent to call only those two witnesses, *id.* at ECF p. 29.

IHO Wahrman denied summary judgment and held the due process hearing on November 9, 2020.  Dkt. No. 18 ¶¶ 27–28; Dkt. No. 16-10.  At the hearing, Plaintiff submitted two witness affidavits of assistant principals at Gersh; DOE declined any cross-examination.  Dkt. No. 16-10 at ECF pp. 4–6.  The IHO heard testimony from the parent, but DOE did not cross examine the parent.  *Id.* at ECF p. 11.  At the request of the parties, the IHO received closing statements in writing.  *Id.* at ECF p. 13.  On December 3, 2020, DOE submitted a two-page motion to dismiss, arguing that Plaintiff had not shown the appropriateness of the unilateral placement.  Dkt. No. 18 ¶ 33; Dkt. No. 16-12.  On that same day, Plaintiff submitted a written closing statement.  Dkt. No. 18 ¶ 34; Dkt. No. 16-11.  Plaintiff's ten-page closing statement contained standard language regarding the IDEA and the *Burlington/Carter* test and parroted the argument regarding a FAPE

contained in the summary judgment motion.  Dkt. No. 16-11.  It contained several new paragraphs summarizing the evidence supporting a finding that the unilateral placement was appropriate and that the balance of equities weighed in favor of the Parent.  *Id*. at ECF pp. 7–9.

On March 19, 2021, IHO Wahrman issued a FOFD, ruling for Plaintiff on all three prongs of the *Burlington/Carter* test.  Dkt. No. 18 ¶¶ 35–37; Dkt. No. 16-13.  The IHO ordered that DOE directly pay for the cost of JB's attendance at Gersh and for transportation costs.  Dkt. No. 16-13 at ECF p. 7.

## PROCEDURAL HISTORY

This case was initiated by complaint filed on December 30, 2021.  Dkt. No. 1.  On June 3, 2023, a representative of DOE, Simone Nicholson, wrote to one of Plaintiff's attorneys stating:

> Hope all is well. Happy to report that I can convey an offer from defendant to resolve this case for $17,000. As you know, this was just reassigned to me a little more than a week ago and I was successful in my efforts to get this expedited, and I'm actually surprised that I was able to get this much progress so quickly.
>
> Please let me know your thoughts. Also, please let me know if you'll consent to adjourn the briefing schedule by two weeks to give us time to get the case settled, and also commit to suspend work on the motion.

Dkt. No. 37-2 at ECF p. 1.  In response, Plaintiff's attorney stated in pertinent part: "While Plaintiff is not currently interested in putting off completion of the [summary judgment] motion, she remains open to a good faith offer from DOE. Plaintiff does not anticipate seeking any expedition of the briefing schedule. This should be ample time—indeed, two additional weeks— for DOE to resubmit to the Comptroller."  Dkt. No. 37-3 at ECF p. 1.

On June 8, 2022, Plaintiff filed its motion for summary judgment along with supporting declarations, a Rule 56.1 Statement, and a memorandum of law.  Dkt. Nos. 14–18.  DOE filed its memorandum of law in opposition to the motion for summary judgment on July 9, 2022, Dkt.

No. 25, and filed declarations in opposition to the motion for summary judgment on August 3, 2022, Dkt. Nos. 36–39.  Plaintiff filed its reply memorandum of law on August 3, 2022.  Dkt. No. 40.

## DISCUSSION

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'"  *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs [] to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).

## I.     Attorneys' Fees

Plaintiff seeks a total of $44,090.04 in fees and costs ($43,527 prior to interest), composed of $23,252.27 for CLF's work during the administrative component of the case and $20,837.77 for the federal litigation component.  Dkt. No. 40-1.[2]  The Court first discusses the hourly rates upon which the fee request is based.  It then turns to the hours billed and whether they are reasonable.  Finally, the Court addresses the requests for costs and interest.

### A.     Hourly Rates

The IDEA mandates that the fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished" and that "[n]o bonus or multiplier may be used in calculating the fees awarded."  20 U.S.C. § 1415(i)(3)(C); *see also S.J. v. N.Y.C. Dep't of Educ.*, 2022 WL 1409578, at *1 (2d Cir. May 4, 2022) (summary order) ("Such fees must be 'reasonable' and 'based on rates prevailing

---

[2] The figures quoted are after the application of requested interest.

in the community in which the action or proceeding arose for the kind and quality of services furnished.'" (quoting *A.R. ex rel. R.V.*, 407 F.3d at 79)). The IDEA's definition of a "reasonable attorney's fee" is interpreted consistently with other civil rights fee-shifting statutes. *See A.R. ex rel. R.V.*, 407 F.3d at 75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006). "Within this framework, district courts 'determin[e] a reasonably hourly rate by considering all pertinent factors, including the *Johnson* factors [as articulated in *Johnson v. Georgia Hwy. Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989)], and then multiply[ ] that rate by the number of hours reasonably expended to determine the presumptively reasonable fee.'" *S.J.*, 2022 WL 1409578, at *1 (alterations in original) (quoting *Lilly v. N.Y.C. Dep't of Educ.*, 934 F.3d 222, 230 (2d Cir. 2019)). In determining a reasonable fee, "the district court must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (emphasis omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (1984)). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (summary order) (alteration in original) (quoting *Lilly*, 934 F.3d at 231). As noted, the Court also considers the following *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion

of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228 (citation omitted).

Congress intended to incent attorneys to act as private attorneys-general to vindicate the policies of the IDEA. *See Fox v. Vice*, 563 U.S. 826, 833 (2011). "[T]he fee-shifting feature of the IDEA—including the authority to award reasonable fees for the fee application itself—plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves." *G.T. v. N.Y.C. Dep't of Educ.*, 2020 WL 1516403, at \*10 (S.D.N.Y. Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020) (second alteration in original) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)). In particular, "[i]n evaluating the reasonableness of the fee, the court, among all other factors, should be sensitive to an adequate incentivization of counsel to take these cases." *Y. G. v. N.Y.C. Dep't of Educ.*, 2022 WL 1046465, at \*1 (S.D.N.Y. Apr. 7, 2022). The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks and citation omitted). "When a plaintiff succeeds in remedying a civil rights violation, . . . he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Fox*, 563 U.S. at 833 (quoting *Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).

Five attorneys billed time to the matter for Plaintiff: Andrew Cuddy, Michael Cuddy, Jason Sterne, Kevin Mendillo, and Kopp. Dkt. No. 15 ¶ 96. The following paralegals and law

clerks worked on the matter: Shobna Cuddy, Khrista Smith, Cailin O'Donnell, Emma Bianco, Amanda Pinchak, John Slaski,[3] and Allyson Green.  *Id.*  Plaintiff asks that the time of Andrew Cuddy, Michael Cuddy, and Jason Sterne be compensated at a rate of $550 per hour and the time of Kevin Mendillo at $450 an hour.  *Id.*  Plaintiff also asks that the time of Kopp be compensated at a rate of $400 an hour, except time when he performed paralegal tasks, which should be compensated at $225 an hour.  *Id.*  Finally, Plaintiff asks that the time for paralegals and the law clerk be compensated at $225 an hour.  *Id.*  DOE responds that CLF senior attorneys should be compensated at a rate of $275 an hour, junior attorneys at a rate of $165 an hour, and paralegals at a rate of $90 an hour.  Dkt. No. 25 at 9.

Determining the appropriate hourly rate for attorneys in IDEA cases presents a vexing challenge.  The statute instructs that the court is to determine the rate by first identifying "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Chambless*, 885 F.2d at 1058–59 (citation omitted) (emphasis omitted).  Yet, the community that provides similar services is comprised mostly of those who perform work under fee-shifting statutes and are compensated by awards made by federal district judges.  The evidence before the Court shows only a shallow "private" market for services, and whatever market exists no doubt is impacted by the awards granted by courts under the IDEA fee-shifting statute.  There is thus little evidence of what "a paying client would be willing to pay 'bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'"  *Ortiz*, 843 F. App'x at 359 (citation omitted) (alteration in original).  The self-referential nature of fee awards in this area of law is obvious—judges talking to one another without any reference to a market against which to determine whether the rates

---

[3] Slaski is a law clerk.  Dkt. No. 15 at ECF p. 20.

that they are awarding bears a relationship to what the market would pay or is decidedly off-base.  The Second Circuit itself has identified the risk that courts will "[r]ecycl[e] rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [the fee-shifting statute] and compensation available in the marketplace."  *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005).

The courts in this District have found that "[t]he prevailing market rate for experienced, special-education attorneys in the New York area *circa* 2018 [was] between $350 and $475 per hour."  *V.W. v. N.Y.C. Dep't of Educ.*, 2022 WL 37052, at *4 (S.D.N.Y. Jan. 4, 2022) (quoting *R.G. v. N.Y.C. Dep't of Educ.*, 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019)); *see also M.D. v. N.Y.C. Dep't of Educ.*, 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018) (describing same rate range).  That determination reflects the judgment of numerous district court judges who have had the opportunity to observe the range of litigation (albeit rarely to see the negotiation of fees in the private market).  For cases where the work has spanned 2017 to 2021, "[c]ourts have [] awarded the senior attorneys billing" in these cases "hourly rates for work performed during this time period as low as $360 per hour, and as high as $420 per hour."  *V.W.*, 2022 WL 37052, at *4 (cleaned up).  More recently, however, while one court has cited a range of $350–$375 per hour for Andrew Cuddy and Michael Cuddy, *see J.P. v. N.Y.C. Dep't of Educ.*, 2023 WL 2447264, at *6 (S.D.N.Y. Mar. 10, 2023); *H.A. v. N.Y.C. Dep't of Educ.*, 2022 WL 580772, at *6 (S.D.N.Y. Feb. 25, 2022) (same), other judges have found that an hourly rate of $400 an hour is appropriate for Andrew Cuddy, Michael Cuddy, and Jason Sterne, citing in part "the passage of time since previous awarded rates," *V.W.*, 2022 WL 37052, at *5; *N.G.B. v. N.Y.C. Dep't of Educ.*, 2022 WL 800855, at *3 (S.D.N.Y. Mar. 16, 2022) (finding that a rate of $400 per hour to be reasonable for Andrew Cuddy and Jason Sterne "in view of the passage of

time and inflation"); *D.P. v. N.Y.C. Dep't of Educ.*, 2022 WL 103536, at *10 (S.D.N.Y. Jan. 10, 2022) (same).  Courts have awarded correspondingly lower rates for the more junior attorneys and for paralegals.  *See, e.g.*, *N.G.B.*, 2022 WL 800855, at *3 (finding $225 an hour to be reasonable for Kopp, $125 an hour for Shobna Cuddy as a senior paralegal, and $100 an hour for other paralegals).  This Court has been at the higher end of the range, awarding fees at rates of $420 an hour for Andrew Cuddy, $400 an hour for Michael Cuddy and Jason Sterne, and from $250 to $200 an hour for Kopp, albeit on facts distinctive to each case.  *See K.O. v. N.Y.C. Dep't of Educ.*, 2022 WL 1689760, at *9 (S.D.N.Y. May 26, 2022) ($420 an hour for Andrew Cuddy, $400 an hour for Michael Cuddy and Sterne, and $250 an hour for Kopp); *S.H. v. N.Y.C. Dep't of Educ.*, 2022 WL 254070, at *6 (S.D.N.Y. Jan. 26, 2022) ($420 an hour for Andrew Cuddy, $400 an hour for Michael Cuddy and Jason Sterne, and $250 an hour for Kopp); *A.G. v. N.Y.C. Dep't of Educ.*, 2021 WL 4896227, at *8 (S.D.N.Y. Oct. 19, 2021) ($420 for Andrew Cuddy and $400 an hour for Sterne); *M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *13–14 (S.D.N.Y. Oct. 13, 2021) ($420 an hour for Andrew Cuddy and Sterne and $200 for Kopp).  The Court consistently has awarded fees at rates of $125 an hour for senior paralegals and $100 an hour for paralegals and law clerks.  *See, e.g.*, *K.O.*, 2022 WL 1689760, at *8.

In the absence of contrary evidence that the rates do not bear a reasonable relationship to that which would be required in a private market, the Court concludes, along with the Honorable Judge John G. Koeltl in *N.G.B.*, that $400 an hour is an appropriate and reasonable rate for Andrew Cuddy, Michael Cuddy, and Sterne for their work with regard to the exact same client. *See N.G.B.*, 2022 WL 800855, at *3.  The Court also concludes that a rate of $225 per hour is

reasonable for Kopp.  *Id.* at *4.[4]  The Court will use rates of $125 an hour for Ms. Cuddy and

$100 an hour for the other paralegals and the law clerk.  *See J.P.*, 2023 WL 2447264, at *6–7;

*D.P.*, 2022 WL 103536, at *10; *V.W.*, 2022 WL 37052, at *5.

The rates are consistent with the *Johnson* factors.  Andrew Cuddy, Michael Cuddy, and

Sterne are each senior attorneys at CLF.  Andrew Cuddy is a 1996 graduate of law school who

was admitted that year to the New York bar.  Dkt. No. 15 ¶¶ 64, 66.  His practice focuses on

special education law; and since 2001, he has litigated hundreds of special education due process

hearings throughout New York, as well as in Texas, Ohio, and North Carolina.  *Id.* ¶¶ 65, 68–69.

He is the founder and managing attorney of CLF.  *Id.* ¶ 74.  Michael Cuddy is a 1988 law school

graduate who has been admitted to the bar since 1989.  *Id.* ¶ 81.  Prior to his attendance at law

school, he was a high school social studies teacher in New York State public schools.  *Id.*  He

worked as a school district administrator for nineteen years and as a school district attorney for a

school district for five years, and he represented the Ithaca City School District in matters before

the New York State Division of Human Rights and the New York State Department of Law for

ten years while working as an administrator for that district.  *Id.*  He has worked for CLF since

2009 and has represented parents in over one hundred impartial due process hearings.  *Id.*  Sterne

was admitted to the bar in 1998 and practiced general litigation prior to 2005.  From 2005 until

his departure from CLF in 2020, he practiced continuously and fulltime in the area of special

education law.  *Id.* ¶¶ 82–83.  They "are all highly experienced special education law attorneys,"

who would be expected to command close to the highest rates paid to other professionals in the

---

[4] The Court will not award fees for the time of Mendillo, who spent only twelve minutes on the
federal litigation aspects of this case, Dkt. No. 15 ¶ 96, and whose role was seemingly so
unimportant that Plaintiff does not even describe his experience or his role in the case in the
papers supporting the motion for summary judgment.

field of special education.  *V.W.*, 2022 WL 37052, at *5.  The $400 rate is consistent with the evidence submitted by Plaintiff.  *See* Dkt. No. 15-22 ¶ 9 ("I am unaware of any New York City-based special education law firm that charges less than $400 per hour for the principal attorney's work.  I have had numerous clients pay my full $375 hourly rate in the past and my full $400 hourly rate more recently.") (declaration of Steven J. Alizio).

Kopp is a much more junior lawyer.  He is a 2015 graduate of law school who was admitted to the bar less than five years before he performed the work at issue in this case.  Dkt. No. 16 ¶¶ 29, 31.  He "transitioned" to CLF only in April 2018, after having not practiced in the area of special education law before then.  *Id.* ¶¶ 34–35.  He has not written in the area of special education, appeared as a speaker at conferences, or apparently joined any bar groups devoted to that particular area of practice.  *Id.* ¶¶ 37–38 (describing that Kopp researched and developed CLE materials and participated in training new attorneys and is a member of several bar associations).  His time is appropriately billed at the lowest rung for attorneys who practice in the area of special education.

The other *Johnson* factors counsel in favor of the use of these rates, which are somewhat lower for Andrew Cuddy and Kopp than those that the Court has recently used for either lawyer.  The work in this case was "quotidian" and carried very little risk.  *M.H.*, 2021 WL 4804031, at *14.  Following the partial resolution offered by DOE, the case involved only application of the *Burlington/Carter* test to J.B.'s unilateral placement at Gersh.  The legal questions were not novel or difficult.  For lawyers in the field of special education, application of the *Burlington/Carter* test requires very little specialized knowledge.  Moreover, CLF was able to make its arguments with the benefit of a prior FOFD that—as CLF itself argued—was dispositive of the first issue presented, of whether DOE had deprived J.B. of a FAPE.  Counsel

operated under no great time pressure and the matter did not require an extensive devotion of labor or services.  The case was not undesirable.  There is no showing that CLF forewent other far more lucrative work to take on this representation.  Finally, the "nature and length" of the parties' relationship is neutral as to whether Plaintiff is entitled to a higher or lower than normal prevailing hourly rate.  *Lilly*, 934 F.3d at 228 (citation omitted).  While recognizing that a close "relationship between counsel and the plaintiff could suggest that a lower hourly rate is warranted," courts have been hesitant to penalize with a lower rate an attorney who has already acquired familiarity with a client and thus whose "familiarity with th[e] case [] made him uniquely qualified."  *See Wells Fargo Bank, NA v. Konover*, 2014 WL 3908596, at *8 (D. Conn. Aug. 8, 2014), *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015).  Such is the case here.  CLF has represented N.G.B. and J.B. since 2016 and has handled several cases for them, covering a number of school years, from 2014–2015 to 2021–2022.  Dkt. No. 15 ¶¶ 6, 8–11; Dkt. No. 15-3.  While, in isolation, such a client who is able to offer repeat business might be able to command a lower rate in the market, CLF was able to offer greater value and efficiency to N.G.B. and J.B. by virtue of its familiarity with their situation.  The Court will not award lower rates because CLF knew Plaintiff well.  To hold otherwise could have the perverse effect of deterring those firms which could most efficiently handle a case (because of the investment they have already made in the client) from taking on the representation, thus potentially both diminishing the effectiveness of the representation and driving up the cost for a losing party.

In a different case, involving greater risk or requiring greater skill, the Court would be prepared to award fees with higher rates.  Recognizing, however, that the calculation of a reasonable rate is not an exact science and also recognizing that Plaintiff is entitled to use of

14

current rates, *see M.H.*, 2021 WL 4804031, at *31 ("[I]n IDEA cases, as in other fee-shifting

contexts, the Court should take into account 'delay' by using current rates in calculating a

'reasonable' attorneys' fee."), the Court sees no reason to depart from the rates recently found by

Judge Koeltl to be appropriate for similar work performed by these same lawyers for the same

client where "certain issues before the IHO were uncontested, the hearing was relatively short,

and the defendant introduced no documentary evidence and few, if any, witnesses," *N.G.B*, 2022

WL 800855, at *3.

Plaintiff argues vigorously that the rates used in *N.G.B.* were not based upon the

"prevailing rates in the community," Dkt. No. 17 at 11–12, and raises the spectre of insufficient

fees driving attorneys out of the field of special education law and thwarting "the express will

and Act of Congress [that the IDEA be enforced] in the community for the indigent, non-paying

citizenry who need fee-shifting the most," *id.* at 10.  Plaintiff offers that should the Court find the

evidence Plaintiff has offered in support of its fee request to be insufficient, "it may be wise for

the Court to reserve on this motion and enter an Order detailing what independent, neutral

evidence the Court would find helpful from the parties."  *Id.* at 14.  The Court is sympathetic to

CLF's concern.  But that is not the way the adversarial system works.  If counsel believes that

the rates used by the courts depart from those prevailing in the community, it is incumbent on

counsel to present evidence that would permit the Court both to define the relevant community

and to ascertain the rates prevailing in that community.  Recognizing that a request for attorneys'

fees should not result in a second major litigation, the Court has never begrudged the parent the

right to offer all of the competent relevant evidence it has to support a fee request and to receive

compensation for doing so.  *See M.H.*, 2021 WL 4804031, at *21 ("Although a request for

attorney's fees should not result in a second major litigation, neither should the threat that

counsel will not receive its reasonable fees be a bludgeon that can be used by the losing school district to coerce the parent at the administrative stage to an inadequate settlement or to a compromise of the parent's rights.") (cleaned up); *see also D.P.*, 2022 WL 103536, at \*13 (same).[5]

Plaintiff falls short on that score.  Much of the evidence upon which Plaintiff relies has been considered by courts in this District and been rejected as a sound basis for the calculation of a reasonable rate.  The Court does not fault Plaintiff for trying again; Plaintiff is entitled to, and has received, an independent review of its evidence.  *See United States v. Baker*, 2020 WL 4589808, at \*3 (S.D.N.Y. Aug. 10, 2020) ("[I]t is the genius of our federal judicial system that, absent controlling Circuit or Supreme Court precedent, and with due attention paid to parties' reasonable expectations based on settled practice and with respect for the decisions of other judges, it is still upon each District Judge to exercise her or his best judgment as to how the law should apply to the facts before her.").  However, Plaintiff fails to respond to the criticism leveled against this evidence in other cases and, even viewed favorably, the evidence submitted by Plaintiff either supports the Court's proposed rates or does not suggest the Court should use different rates.

First, Plaintiff submits the declaration of Adrienne Arkontaky, the Vice President and Managing Attorney for the Westchester and Philadelphia offices of CLF, who reviews the work product and billing records associated with all matters in the New York and Pennsylvania

---

[5] Plaintiff presents a study that there is a positive correlation between the representation of a parent by counsel and the outcome of a due process hearing.  Dkt. No. 15-21.  However, Plaintiff presents no empirical evidence to support the proposition that the awards in IDEA cases have been so low as to drive lawyers out of the practice of special education law.  To the extent that the concern is genuine and well-founded, it would benefit from study, including possible consideration of the metrics that courts might use to determine the prevailing rate in the community for lawyers in the particular area of practice.

offices. Dkt. No. 15-7 ¶¶ 5, 11. Arkontaky attests that as of March 31, 2021, the date of the declaration, in the twelve years she has practiced in the area of special education law, "there have been and continue to be clients who agree to and pay" the attorney rates established in the "standard retainer agreements" signed by both a representative of the firm and the client and that "a number of clients pay the invoices and pay our billing rates as stated in our retainer agreements." *Id.* ¶¶ 13, 20. Arkontaky attaches retainer agreements and billing records for several matters as purported evidence of the client's acceptance of CLF's rates. *Id.* ¶¶ 23–34. She identifies seven matters on which the client was charged and paid the rates exactly as set forth in CLF's retainer, which included a rate of $550 for Arkontaky and rates ranging from $425 an hour to $225 an hour for the time of CLF associates. *Id.* ¶¶ 24, 25, 29, 30, 31, 32, 33. The matters are described simply as "access to government benefits," "special education advocacy and litigation matter," or a "special education matter." *Id.* No further information is provided. A review of the timesheets also indicates that many of these matters involved far less time than the present lawsuit. For example, for one of the matters, the total bill to the client was only $455, Dkt. No. 15-8 at ECF p. 39, and for another matter, the total bill to the client was only $2,445.00, *id.* at ECF p. 47. Furthermore, none of the attorneys whose time is at issue in this lawsuit appear to have billed time to any of those matters. This evidence therefore has little to no value in assessing what the appropriate hourly fees are here.

As to the remaining matters, they are ones in which the effective rates paid were less than those set forth in CLF's retainer and only one that Arkontaky references appears similar to the present case and entailed the drafting of a DPC and denial of a FAPE. Dkt. No. 15-7 ¶ 26; *see also N.A. v. N.Y.C. Dep't of Educ.*, 2022 WL 17840273, at *6 (S.D.N.Y. Aug. 15, 2022), *report and recommendation adopted*, 2022 WL 17581774 (S.D.N.Y. Dec. 12, 2022) (finding that a

declaration by Arkontaky did not support CLF's rate request because only three of the six matters related to an IDEA proceeding, none occurred in New York City or implicated DOE as a defendant, and the exhibits dealt exclusively with the attorneys in the Valhalla office and not the ones in Auburn who worked on the matter at hand). However, in that case, CLF agreed to forgo payment until the litigation was resolved. Dkt. No. 15-7 ¶ 26. It thus does not support CLF's proposed rates. In addition, only one of the remaining matters involves a CLF attorney whose billing is at issue in the present matter, specifically, Sterne. However, in that case, while Arkontaky states that Sterne's hourly rate was $525, she also states that "[t]he client received, was charged and paid all applicable hourly rates as agreed to in the retainer agreement upon receipt of monthly invoices *until their resources were exhausted*." *Id.* ¶ 34 (emphasis added). Accordingly, Sterne's effective rate, taking into consideration all hours worked over the course of the matter, was presumably less than (and potentially substantially less than) $525 per hour.

If anything, Arkontaky's declaration supports that CLF clients regularly pay rates lower than those listed in the retainer agreement or sought by CLF. The declaration describes matters in which (1) the associate's rate was discounted to $275 an hour "because of a long-standing relationship with the client," *id.* ¶ 26; (2) CLF represented the client in a special education and disciplinary matter and "agreed to a flat fee in the matter regarding the disciplinary case" even though Arkontaky claims that "it was clear that the client agreed to our rates pursuant to the retainer agreement," *id.* ¶ 27; and (3) a client paid all applicable rates for CLF attorneys including $525 for CLF's most senior attorneys and of counsel, "until their resources were exhausted," *id.* ¶ 34. In short, for a significant number of matters, while the nominal rate charged may have been as much as $550 an hour for the time of Arkontaky, the effective rate was far lower. Tellingly, Arkontaky does not disclose that effective rate. Arkontaky also

attaches copies of orders and opinions from New York state courts in which CLF was paid its requested fees or close to its requested fees, which included fees based on a rate of $550 for Arkontaky, and associate rates of $400 and $375 an hour, but none of the matters are under the IDEA and nothing further is stated about the matters.  *See id.* ¶¶ 36–38.

Even if the declaration had shown that CLF was able to extract the fees that they request in the present lawsuit from paying clients in the past, this evidence still would not establish that those fees are reasonable.  As the Court has previously stated:

> The question before the Court is not whether CLF has been able to extract higher fees from paying clients than that which the Court has approved here but whether the fees it charges are the prevailing rates in the community.  The reasonable hourly rate is the rate a paying client would be willing to pay bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The fact that certain clients might have agreed at a point in the past that CLF should be paid at a particular rate does not establish that rate is reasonable.  On a fee-shifting application . . . , the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending.

*K.O.*, 2022 WL 1689760, at *11 (cleaned up).

For these reasons, the Arkontaky declaration does not support that rates of $400 an hour for the more senior lawyers and $225 an hour for Kopp are outside the range of rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," or that a reasonable client would have agreed to pay CLF any greater rates for the work to be performed in this case.  *Chambless*, 885 F.2d at 1058–59 (citation omitted) (emphasis omitted).

Second, Plaintiff submits the declaration of Benjamin Brown, an associate at Gina DeCrescenzo, who is a 2012 law school graduate and was admitted to the bar in 2013.  Dkt. No. 15-9.  He states that "through [his] professional experiences in the community," he is "familiar with other IDEA practitioners, including their rates charged, paid, and prevailing in the Southern

District of New York." *Id.* ¶ 3.  Mr. Brown sets forth the hourly rates that IDEA practitioners request from DOE.  Those figures for senior attorneys with significant experience range from $600–$675 on the high end to $375–$425 on the lower end.  *Id.* ¶¶ 10–19.  But those figures are largely drawn from declarations submitted in other IDEA cases regarding the fees that are sought.  "[T]he evidence of fees sought in other cases is of limited weight 'because the . . . evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed.'"  *K.O.*, 2022 WL 1689760, at *11 (quoting *S.J. v. N.Y.C. Dep't of Educ.*, 2021 WL 100501, at *3 (S.D.N.Y. Jan. 12, 2021)); *see also C.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y. July 2, 2019) (explaining that district courts "have decided not to rely too heavily [on such] affidavits, since they may only provide isolated examples of billing rates of a few lawyers, may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients" (cleaned up)).[6]  Thus, while the affidavit may support that Plaintiff's requested rates are within the range of rates sought by similar counsel, it does not establish whether those requested rates are within the range of rates actually used in similar cases.  In fact, courts have awarded fees to certain counsel listed in the Brown declaration at rates similar to those the Court awards to the senior attorneys in the present

---

[6] For the same reasons, the exhibits to Brown's declaration are of limited weight.  Dkt. No. 15-10.  They speak to the rates that are "charged" or requested by counsel in other cases, and not whether they are routinely collected or awarded.  *See S.H.*, 2022 WL 254070, at *8 (noting that the evidence does not substantiate whether such rates were actually paid or, even if they were, the relevant context surrounding the payment of such rates); *C.B.*, 2019 WL 3162177, at *7 (same); *S.J.*, 2021 WL 100501, at *3 ("The Court declines to rely on the asserted rates as a starting point in the analysis of a reasonable hourly rate, because the submitted evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed."); *R.G.*, 2019 WL 4735050, at *2 n.4 ("Although somewhat relevant, the Court does not find such declarations especially helpful absent context necessary to apply the *Johnson* factors.").

matter.  *See, e.g.*, *I.O. v. N.Y.C. Dep't of Educ.*, 2021 WL 2701449, at *1 (S.D.N.Y. June 29, 2021) (finding that $425 was a reasonable hourly rate for Irina Roller, who purportedly charges $575 per hour in Brown's declaration); *N.L.C. v. N.Y.C. Dep't of Educ.*, 2022 WL 831820, at *4 (S.D.N.Y. Mar. 18, 2022) (establishing $400 as an appropriate rate for Gary Mayerson, who bills at an hourly rate of $675 based on Brown's declaration).

Third, Plaintiff cites to records concerning attorneys' fees procured through the New York Freedom of Information Law ("FOIL") requests to DOE.  Dkt. No. 15 ¶ 31; Dkt. No. 15-11.  Plaintiff requested DOE's records on attorneys' fees from January 1, 2016, through July 9, 2020.  Dkt. No. 15 ¶ 31.  DOE sent Microsoft Excel spreadsheets for more than 7,300 cases that DOE paid between January 4, 2016, and July 2, 2020.  *Id.*  The data included the opposing law firm/office, the principal biller's hourly rate, the hours and costs claimed, the total amount claimed, the settlement amount, and the date of payment approval.  *Id.*  Plaintiff's declaration excerpts certain of these records and highlights what Cuddy believes to be "DOE's acknowledgement of acceptable rates."  *Id.* ¶¶ 32–33.

The FOIL records lack sufficient context to provide an adequate basis for the Court to make a finding about the proper hourly rate for the attorneys who litigated N.G.B.'s case.  *See M.H.*, 2021 WL 4804031, at *11 ("The FOIL requests, which reflect the rates paid to a number of differing attorneys of varying experience lack sufficient context to provide an adequate basis for the Court to make a finding about the proper hourly rate for the attorneys who litigated M.H.'s case."); *see also K.E. v. N.Y.C. Dep't of Educ.*, 2022 WL 4448655, at *12 (S.D.N.Y. Sept. 23, 2022); *D.P.*, 2022 WL 103536, at *8 n.9 ("The Court also obtained little guidance from the FOIL materials submitted by Plaintiff's counsel" because of the lack of context).  Moreover, the excerpted rates provide support for the rates the Court has concluded to use.  The average

hourly rate claimed for the principal biller in the FOIL cases appears to be approximately $473 in 2020 and $429 in 2019. *See* Dkt. No. 15-11. The data category is titled "Hourly Rate Claimed for Principal Biller," presumably reflecting that these rates indicate what the principal biller claimed and not the rate at which the principal biller was ultimately compensated. *Id.* In fact, the data indicates that these cases often settled for considerably less. *Id.* In 2019 and 2020, cases appear to have settled for around half of the requested amount. *Id.* Based on this data, rates of $400 an hour for the time of the senior attorneys and $225 for Kopp would seem generous.

Fourth, Plaintiff points to a December 2020 retainer agreement between DOE and the law firm of Hoguet, Newman, Regal & Kenney, L.L.P. ("Hoguet") as support for its proposed rates. Pursuant to that agreement, Hoguet agreed to serve as outside counsel to DOE for stipulated rates of $400 for partners, $300 for associates, and $100 for paralegals. Dkt. No. 15 ¶ 34; Dkt. No. 15-12. DOE argues in a footnote that it is inappropriate to consider rates of a firm that was hired for a limited purpose, specifically to handle IDEA fees-only cases at the end of 2020 and, regardless, such fees support DOE's argument that Plaintiff is not entitled to the fees it seeks. Dkt. No. 25 at 13 n.14. The Court agrees with DOE. The retention agreement did not apply to representation in administrative proceedings, the bulk of the work for which CLF seeks to be compensated here, and thus is of limited probative value to what fees Plaintiff would be entitled to for such work. *See K.E.*, 2022 WL 4448655, at *13 ("[T]he Court accords only limited probative value to the retention agreement, which did not apply to representation in administrative proceedings."). "In any event, the rates specified in the Hoguet agreement are similar to those this Court ultimately awards." *Id.*; *see M.M. v. N.Y.C. Dep't of Educ.*, 2022 WL 3043218, at 6 (S.D.N.Y. Aug. 2, 2022).

Fifth, Plaintiff has provided evidence of inflation from the United States Bureau of Labor Statistics to support its claim for higher hourly rates. Dkt. No. 15 ¶¶ 35–37. Specifically, Plaintiff has detailed IDEA fee awards to attorneys in the Southern District of New York from 1998 to 2022 and noted in brackets the present-day "buy power" of the award based on the Bureau of Labor Statistics' Consumer Price Index ("CPI"). *Id.* Plaintiff has also supplied several years of Real Rate Reports by Wolters Kluwer in support of the contention that inflation has contributed to rate increases for associates. Dkt. No. 15 ¶¶ 39–41. Real Rate Reports provide an analysis of law firm rates divided by practice area, industry, and select U.S. cities. Dkt. No. 15-19 at 3. The point is well taken. Evidence of inflation and changes in the market for legal services may be relevant to determining whether an increase in fees is appropriate and reasonable. Courts have assumed that attorney rates increase with inflation. *See N.G.B.*, 2022 WL 800855, at *3 ("Although [awards dated 2021] were rendered in the relatively recent past, the plaintiffs argue persuasively that some increase is appropriate and reasonable in view of the passage of time and inflation."); *N.L. v. N.Y.C. Dep't of Educ.*, 2023 WL 2523636, at *4 (S.D.N.Y. Mar. 15, 2023) (determining a rate increase from $200 to $250 for Mr. Kopp, who served as lead attorney in this case, factoring in "rate increases due to inflation between 2018 and 2023," even though the work was performed in 2020-22); *V.W.*, 2022 WL 37052, at *4 ("CLF has presented evidence of selected IDEA fee awards in this District since 1998, with adjustments for inflation . . . These arguments are well-taken by the Court, as it is an 'obvious proposition that billing rates continue to increase over time.'"). Courts also have used the Real Rate Reports to inform the determination of a prevailing market rate. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 n.15 (S.D.N.Y. 2015) (discussing how studies,

23

including the 2012 Real Rate Report, finding that rates had increased were informative to determining the prevailing market rate in an IDEA case).

The Court, however, need not consider inflation here as it bases its award on *current* prevailing market rates for Plaintiff's services.  As detailed, in determining the reasonable hourly rates for Plaintiff, the Court looked to the fees awarded to CLF in recent decisions in the Southern District of New York, *see supra* pp. 10–11—decisions that already and recently accounted for "the passage of time and inflation."  *N.G.B.*, 2022 WL 800855, at *3.  The Real Rate Reports and CPI evidence also do not support Plaintiff's contention that these rates are unduly low.  The Real Rate Reports contain mean rates for litigation generally in New York; they do not contain rates for IDEA litigation.  In addition, while the CPI data indicates that certain awards in the past adjusted to present value based on the CPI exceed the rates awarded here, this does not mean that the fees the Court plans to award are too low.[7]  This data assumes that wages increase one-for-one with the CPI.  But, Plaintiff presents no evidence to support this assumption.  It is entirely plausible that wages have not increased in step with the CPI, in which case these figures would be of little probative value.  It is also the job of the Court to determine not what wages should be but what a reasonable paying client would be willing to spent.  The Court therefore places little to no weight on this evidence in determining the reasonable hourly rate.

Finally, Andrew Cuddy contends that CLF's rates are comparable to those permitted under the USAO *Laffey* Matrix, stating that he "understand[s] [the *Laffey* Matrix] to be the primary basis for IDEA rates in Washington, D.C.," which has similar rates and a cost of living

---

[7] It is also unclear exactly how Plaintiff determined what fees to include in this CPI chart and whether it includes all fees awards or only a select number of them.  Dkt. No. 15-13.

to New York City.  Dkt. No. 15 ¶ 42; Dkt. No. 15-20.[8]  The original *Laffey* Matrix debuted in

1983 in an employment discrimination case, *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354

(D.D.C. 1983), and soon became "the most commonly used fee matrix" for lawyers who practice

complex federal litigation in the D.C. Circuit.  *Eley v. District of Columbia*, 793 F.3d 97, 100

(D.C. Cir. 2015).  Generally, the *Laffey* Matrix was introduced to capture "the prevailing rates

for 'complex federal litigation' in Washington, D.C. legal practice."  *B.J.*, 2020 WL 8512639, at

*2 (citation omitted).  When the *Laffey* Matrix is applicable, courts in the District of Columbia

are required to update the applicable hourly rates in accordance with inflation.  *Id.*  The LSI

*Laffey* Matrix furnished by Plaintiff provides that an hourly rate for lawyers who are twenty or

more years out of law school from June 1, 2021, until May 31, 2022, should be $919.  Dkt. No.

15-20 at 4.  For a lawyer like Mr. Kopp, who is eight years out of law school, a rate of $676

---

[8] Mr. Cuddy's declaration provides that he has attached the U.S. Attorney's Office ("USAO") *Laffey* Matrix, Dkt. No. 15 ¶ 42, but the attached exhibit is actually the Legal Services Index ("LSI") *Laffey* Matrix, Dkt. No. 15-20.  Beginning in 2015, the USAO maintained a separate matrix, independent of the *Laffey* Matrix, for attorneys in Washington, D.C. that periodically updated the 1983 data using the Bureau of Labor Statistics' general inflation tracking index.  *See DL v. District of Columbia*, 924 F.3d 585, 592 (D.C. Cir. 2019); *J.T. v. District of Columbia*, 2023 WL 355940, at *9 (D.D.C. Jan. 23, 2023); *B.J. v. District of Columbia*, 2020 WL 8512639, at *2 (D.D.C. Nov. 9, 2020), *report and recommendation adopted*, 2021 WL 5992052 (D.D.C. Feb. 10, 2021).  The D.C. Circuit rejected the use of the USAO *Laffey* Matrix in IDEA cases brought in Washington, D.C. because it incorporates rates from all types of lawyers rather than only federal litigation practitioners and incorporates a broader metropolitan area than constitutes the community in which the action arose.  *DL*, 924 F.3d at 592.  The USAO introduced a new fee matrix in November 2021 called the Fitzpatrick Matrix, which was created by a law professor who based the figures on "the hourly rates charged by lawyers litigating in the United States District Court for the District of Columbia, as recorded in motions for attorneys' fees brought between May 31, 2013 and May 31, 2020."  *J.T.*, 2023 WL 355940, at *10.  Unlike the USAO *Laffey* Matrix, the LSI *Laffey* Matrix, which has been advanced by some plaintiffs' attorneys, "estimates price increases for the legal market nationwide" based on data from the Bureau of Labor Statistics.  *DL*, 924 F.3d at 589–90.  When comparing the two, courts in the District of Columbia have found the LSI *Laffey* Matrix more persuasive.  *See id.* at 590 (noting that "courts have frequently found the LSI *Laffey* Matrix more persuasive" when the two were pitted against each other).

would be appropriate during that same timeframe.  *Id.*  Paralegals and law clerks would be entitled to a rate of $208.  *Id.*

The absolute rates in the LSI *Laffey* Matrix do not support CLF's proposed rates.  No court in this Circuit has approved the use of the *Laffey* Matrix to determine the rates of lawyers practicing in New York City.  *See Litkfosky v. P&L Acquisitions, LLC*, 2016 WL 7167955 (E.D.N.Y. Aug. 19, 2016) (noting that no case in the Second Circuit has adopted or approved any form of the *Laffey* Matrix in assessing legal fees for lawyers outside of the Washington, D.C. metro and citing cases to that effect); *In re Terrorist Attacks on September 11, 2001*, 2015 WL 6666703, at *8–9 (S.D.N.Y. Oct. 28, 2015) (noting the applicability of the *Laffey* Matrix in the District of Columbia area).  Moreover, even in the Circuit where it is used, with respect to rates in Washington D.C., the LSI *Laffey* Matrix addresses only complex federal litigation.  It does not address administrative litigation and IDEA fees cases, as a general matter, have not been considered complex federal litigation.  *See Reed v. District of Columbia,* 843 F.3d 517, 525 (D.C. Cir. 2016) (affirming the district court's decision finding that the appellants had failed to meet their burden to prove that IDEA cases fall within the area of "complex federal litigation"); *Cox v. District of Columbia*, 264 F. Supp. 3d 131, 142–43 (D.D.C. 2017) (noting that "[c]ourts in this district generally do not recognize IDEA litigation as complex when it comes to fee awards"); *but see J.T. v. District of Columbia*, 2023 WL 355940, at *13 (D.D.C. Jan. 23, 2023) ("[T]his case, like so many before, does not settle the question of whether the relevant market for IDEA attorneys' fees is necessarily that of complex federal litigation.").  Although the law has its intricacies, at the federal litigation level IDEA litigation, generally, partakes of little of the intricacies of complex civil rights cases, which involve issues of qualified immunity, the scope of

constitutional protections, and the like.  None of this evidence accordingly changes the Court's opinion as to the reasonable fees to which each CLF attorney is entitled.

### B.    Hours Reasonably Expended

The Court next turns to the number of hours reasonably expended.  "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *A.R. ex rel. R.V.*, 407 F.3d at 79 (cleaned up).  "[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee."  *Id.* (quoting *G.M. ex rel. R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)); *accord I.B. ex rel. Z.B.*, 336 F.3d at 80.

In assessing the number of hours reasonably expended, the Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  However, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox*, 563 U.S. at 838.  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Id.*  Accordingly, "[i]f the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours *or by making across-the-board percentage cuts in the total hours for which reimbursement is sought*."  *M.H.*, 2021 WL 4804031, at *15 (emphasis added) (quoting *Wise v. Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008)).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley*, 461 U.S. at 437; *see also C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *7 (S.D.N.Y. Aug. 9, 2018).

The Court first turns to the administrative phase and then to the federal litigation phase.

1.      **Hours Reasonably Expended During the Administrative Phase**

Administrative proceedings under the IDEA are relatively informal.  Dkt. No. 38 ¶ 9.

The proceedings are initiated by a DPC.  8 N.Y. Comp. Codes R. & Regs. ("NYCCRR")

§ 200.5(i).  The DPC can be filed either by the "party presenting the complaint" or an attorney

representing that party and need only include: (i) the name of the student; (ii) the address of the

residence of the student; (iii) the name of the school the student is attending; (iv) a description of

the nature of the problem of the student, including facts relating to such problem; and (v) a

proposed resolution of the problem.  *Id.*  The due process hearing must be preceded by a

resolution meeting, which is attended by the parents and the relevant member or members of the

committee on special education ("CSE") to try to resolve the matter, and which may not be

attended by an attorney of the school district unless the parent also is accompanied by an

attorney.  *Id.* § 200.5(j)(2).  The due process hearing itself is informal.  Dkt. No. 38 ¶ 9.  A

prehearing conference may be conducted by telephone for the purposes of simplifying and

clarifying the issues and planning for the hearing.  NYCCRR § 200.5(j)(3)(xi).  The Federal

Rules of Evidence do not govern the due process hearing nor do the Federal Rules of Civil

Procedure.  Dkt. No. 38 ¶ 9.  The parties may present testimony by affidavit provided that the

witness giving the testimony be made available for cross examination and may be received by

telephone or video conference.  NYCCRR § 200.5 (j)(3)(xii)(c), (d).  Each party has the "right to

present evidence, compel the attendance of witnesses and to confront and question all witnesses

at the hearing," *id.* § 200.5 (j)(3)(xii), but the only rules that govern the receipt of evidence is that

the IHO shall exclude evidence that the IHO "determines to be irrelevant, immaterial, unreliable

or unduly repetitious," *id.* § 200.5 (j)(3)(xii)(c).  Although the IHO may receive memoranda of

law, they may not exceed 30 pages in length.  *Id.* § 200.5 (j)(3)(xii)(g).  Documents need not be

moved into evidence or corroborated by a witness.  Dkt. No. 38 ¶ 8.  The hearing is not held in a

courtroom but typically in a conference room, with the parties and IHO seated around a table, or conducted by telephone or video. *Id.* ¶ 9.

Plaintiff claims 44.4 attorney hours and 17.7 paralegal or law clerk hours were spent during the administrative phase, for a total of $22,732.50 (without interest). Dkt. No. 15 ¶ 96. Defendant argues that Plaintiff's hours should be reduced for the following reasons: CLF (1) overbilled for time spent drafting and filing the DPC, (2) engaged in excessive billing for hearing preparation, (3) billed excessively to prepare hearing exhibits and disclosures in connection with the September 12, 2019 hearing, (4) billed excessively for performing simple, administrative tasks, and (5) improperly used 0.1 time entries. Dkt. No. 25 at 20–22.

The Court first rejects Defendant's claim that Plaintiff improperly used .1 time entries. Although Defendant claims that Plaintiff's use of .1 time entries is "rampant," Dkt. No. 20 at 20–21, only approximately 3 hours of the 62.1 hours spent during the administrative phase and for which Plaintiff seeks compensation consisted of such entries, *see* Dkt. No. 15-1.[9]  Such entries resulted in less than $1,000 in total legal fees, in part, because half of those time entries were attributable to paralegal work and thus billed at the lowest rates. *Id.*

It is true as Defendant points out that courts have, in similar cases, applied substantial reductions for excessive .1 hour billing entries. *See, e.g.*, *Hernandez v. Boucherie LLC*, 2019 WL 3765750, at *6 (S.D.N.Y. Aug. 8, 2019); *C.D.*, 2018 WL 3769972, at *8–9. But those cases involved different facts than are present here. Those courts have noted, in reducing the fees, that while there is nothing "inherently problematic" about the "practice of billing a tenth of an hour

---

[9] Defendant claims that CLF billed $2,257.50 for 0.1 hour entries during the administrative phase of the case. Dkt. No. 25 at 20 n.16.  It is unclear exactly how Defendant arrived at this number and why it differs from the Court's calculation, although it is possible that it is a result of the fact that Defendant is counting time that Plaintiff ended up writing off and not charging for.

for a discrete task," "when an attorney on a single day bills multiple 0.10 hour entries for discreet tasks, where the tasks individually appear likely to have occupied less than 0.10 hours and in total appea[r] likely to have occupied less than the sum total of the 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate." *C.D.*, 2018 WL 3769972, at *8; *see also Boucherie LLC*, 2019 WL 3765750, at *6 ("Perhaps contributing to the excessive totals, the billing records are replete with entries for '0.1 hours' (many on the same day) for ministerial tasks that could not possibly have taken more than a few moments."). Accordingly, courts have reduced hours "where a single timekeeper [] on the same day, reported multiple billing entries for 0.10 hour, for tasks that appear quite quick to accomplish." *C.D.*, 2018 WL 3769972, at *9; *see also Boucherie LLC*, 2019 WL 3765750, at *6. The same is not true here. It appears that only four of the .1 time entries were billed on the same day as another and, for each of the entries that were billed on the same day, those entries were billed by different timekeepers. Dkt. No. 15-1. The Court therefore will not reduce the total hours spent on the administrative phase for .1 time entries.

The Court, nevertheless, agrees with Defendant that the hours Plaintiff spent on the administrative phase were excessive. As noted, the issues in the case were not terribly complex, and this matter was the fourth that the firm had worked on with this client and thus CLF was familiar with the client and Gersh. Dkt. No. 15 ¶ 15. The due process hearing also lasted fewer than thirty minutes and consisted of only one live witness and two witnesses who testified via affidavit, all of whom DOE waived cross-examination with respect to. Dkt. No. 16-10. Yet, Plaintiff nonetheless billed $22,732.50 for 62.1 hours of work. This amount is excessive and reflects some overbilling. *See H.A.*, 2022 WL 580772, at *10 (reducing CLF's hours as excessive where CLF sought recompense for 54.7 hours spent on the administrative proceeding);

*N.G.B.*, 2022 WL 800855, at *4 ("The numbers of hours billed in connection with the administrative proceedings is excessive and warrant reduction" where CLF attorneys billed 55.2 hours in connection with the administrative proceedings).

One example of such overbilling is the total amount of time spent related to the key written filings in the administrative proceeding, specifically, the DPC (approximately three hours), the summary judgment motion (approximately seven hours, including time spent concerning support for proceeding by summary judgment), and the closing statement (approximately five hours). Dkt. No. 15-1. Each of these documents was short: the DPC was only five written pages, the brief in support of summary judgment was three pages, and the closing statement was ten pages. Dkt. Nos. 16-1, 16-7, 16-11. A substantial portion of both the summary judgment brief and the closing statement consisted of standard language as to the legal standard that CLF easily could have taken from past briefs. Dkt. Nos. 16-7, 16-11. Furthermore, these documents built off of one another. In particular, because DOE did not cross examine any of Plaintiff's witnesses at the due process hearing, the arguments and evidence pertinent to the closing statement were nearly identical to the evidence detailed in the summary judgment brief. Unsurprisingly, sentences in the closing statement seem to be taken nearly in full from the summary judgment brief. *Id*. For all of these reasons, the approximately sixteen hours spent related to these three written submissions combined were excessive.

The mere submission of a summary judgment brief at the administrative phase, on its own, raises concerns of overbilling, particularly as that brief resulted in an almost one-hour long hearing on the parties' arguments as to summary judgment. Dkt. No. 16-9. As previously detailed, the administrative IDEA process is intended to be informal. Dkt. No. 38 ¶ 9. There is no requirement that a party submit a summary judgment brief, nor does it appear that such an

approach is normal.  To the contrary, Kopp, one of the lead attorneys on the matter, had to

"research case law and SRO decisions re: use of summary judgment in IDEA proceedings."  Dkt.

No. 15-1.  The summary judgment motion was also not denied on a technical or narrow ground

but on the mere fact that DOE disputed the facts as presented and should have the opportunity to

cross-examine the witnesses.  Dkt. No. 16-9 at 47.  It is unclear exactly why CLF thought such

an approach would be successful and/or was necessary.  Nor is it clear why a client would agree

to pay for such work.

Plaintiff also overbilled with respect to various aspects of the IHO hearings themselves.

For example, Kopp billed .8 of an hour reviewing the March 4, 2020, the May 18, 2020, and the

July 16, 2020 hearing transcripts for accuracy and completeness.  Dkt. No. 15-1.  However, each

of these transcripts was a handful of pages long and contained almost no substantive discussion.

Dkt. Nos. 16-4–16-6.  Review of such transcripts should have taken no more than ten minutes.

This Court is further skeptical of the numbers of attorneys and paralegals who billed time

to the administrative phase of this case.  Four attorneys and seven paralegals and law clerks

billed time to the administrative phase.  Dkt. No. 15 ¶ 96.  Plaintiff does not explain why each of

these persons was required to work on the matter, and "assigning numerous attorneys to a

straightforward matter presents a risk of inefficiency, duplication, and unnecessary billing."

*Union Cent. Life Ins. Co. v. Berger*, 2013 WL 6571079, at *5 (S.D.N.Y. Dec. 13, 2013).

"Considering these factors, and the overall lack of complexity of this action, the Court

finds that an across-the-board 20% reduction is warranted to make the Cuddy Law Firm's

claimed hours reasonable."  *H.A.*, 2022 WL 580772, at *10 (reducing CLF's hours across-the-

board by 20% where CLF sought recompense for 54.7 hours spent on the administrative

proceeding); *see also J.P.*, 2023 WL 2447264, at *11 ("Considering these factors, and the overall

lack of complexity of this action, the Court finds an across-the-board 20% reduction to make the Cuddy Law Firm's claimed hours in the administrative proceedings reasonable."); *cf. B.C. v. N.Y.C. Dep't of Educ.*, 2022 WL 3214374, at *9 (S.D.N.Y. Aug. 9, 2022), *on reconsideration*, 2023 WL 2301424 (S.D.N.Y. Mar. 1, 2023) ("Rather than engage in a painstaking line-item review of each billing entry, in calculating an appropriate reduction of compensable hours '[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.'" (citation omitted)).  In light of the revised attorney rates and this reduction in total hours, the Court awards the following total attorneys' fees to Plaintiff's counsel for the administrative phase of this matter:

| **Timekeeper** | **Reasonable Rate** | **Reasonable Hours** | **Total** |
| --- | --- | --- | --- |
| Andrew K. Cuddy | $400 | 4.56 | $1,824 |
| Michael Cuddy | $400 | 0.16 | $64 |
| Jason Sterne | $400 | 0.56 | $224 |
| Benjamin Kopp | $225 | 30.24 | $6,804 |
| Shobna Cuddy | $125 | 2.56 | $320 |
| Khrista Smith | $100 | 1.2 | $120 |
| Cailin O'Donnell | $100 | 0.56 | $56 |
| Emma Bianco | $100 | 2.32 | $232 |
| Amanda Pinchak | $100 | 4.88 | $488 |
| John Slaski | $100 | 0.8 | $80 |
| Allyson Green | $100 | 1.84 | $184 |
| **Total** | | | $10,396 |

### 2.    Hours Reasonably Expended During the Federal Litigation Phase

The IDEA gives a prevailing parent the right to receive its reasonable attorneys' fees and costs incurred in a federal court action related to vindicating its rights.  *See C.D.*, 2018 WL 3769972, at *11; *J.S.*, 2011 WL 3251801, at *8 ("[R]equested fees for the federal action are reasonable.").  Those fees may be incurred in enforcing the rights of the parent or counsel, under the IDEA, to a reasonable attorneys' fee.  *See M.H.*, 2021 WL 4804031, at *21.

Plaintiff claims 46.2 attorney hours[10] and 4.2 paralegal hours spent in the federal litigation over fees.  Dkt. No. 15 ¶ 96.  While this number alone is not cause of concern, *see V.W.*, 2022 WL 37052, at *6 ("the Court finds the 46.7 hours Coretti billed at the federal level reasonable, notwithstanding the limited scope and straightforward nature of the case" and collecting cases to that effect), a review of the billing records reveals some excessive billing practices, *cf. Fox*, 563 U.S. at 838 ("[T]he determination of fees should not result in a second major litigation.").  For example, CLF billed approximately 2.6 attorney hours drafting the complaint in this matter and then spent an additional four hours to draft the Rule 56.1 Statement. Dkt. No. 15-1.  However, almost all of the facts in the Rule 56.1 Statement appear to have been drawn directly from the complaint, the key difference being that the facts in the Rule 56.1 Statement contain citations to the record.  Dkt. Nos. 1, 18.  The mere addition of citations does not justify an additional four hours of billed work.

Plaintiff also billed .4 hours for Kopp to open the federal case, including drafting and filing the summons and civil cover sheet.  The work should have taken no more than three minutes of paralegal time.  Dkt. No. 26 ¶¶ 8, 10–11.  CLF's justification is that the work would have had to be reviewed by counsel.  Dkt. No. 40 at 13.  The Court is unpersuaded by this

---

[10] As noted, the Court will not award the .2 hours that Kevin Mendillo (attorney) billed.  *See supra* n.4.

argument.  Courts have defined tasks such as these as "purely clerical."  *Y.S. v. N.Y.C. Dep't of Educ.*, 2022 WL 4096071, at *4 (S.D.N.Y. Sept. 6, 2022).  Accordingly, as CLF has been admonished in the past, they are generally not compensable.  *See id.*

   "Courts in this District have often reduced the Cuddy Law Firm's claimed fees at the fee-litigation stage by 20% to 25%, based on similar practices."  *J.P.*, 2023 WL 2447264, at *11 (collecting cases).  However, as in *J.P.*, "[t]he Court will impose a lesser haircut here."  *Id.*  That is because while certain of CLF's submissions in the federal litigation are largely or entirely recycled from submissions in other cases, other submissions, such as the memorandum of law in support of summary judgment and CLF's reply brief, are tailored, at least in part, to the instant matter.  Dkt. Nos. 25, 40.  The memorandum of law specifically references and discusses this Court's prior IDEA decisions, and the reply brief is directly responsive to arguments that DOE makes in its opposition brief.  *Id.*  In addition, a haircut of as much as 20% to 25% is not necessary to place the aggregate hours spent on this federal action within the range of hours that courts have previously deemed reasonable; a 15% haircut, for example, would result in a total of 42.5 hours, across lawyers and paralegals.  *See V.W.*, 2022 WL 37052, at *6 ("[T]he Court finds the 46.7 hours Coretti billed at the federal level reasonable, notwithstanding the limited scope and straightforward nature of the case."); *R.G.*, 2019 WL 4735050, at *5 (finding 44.2 hours on fee application reasonable).  Thus, "[a]lthough the inefficiencies or unexplained hours above warrant some pruning, the aggregate hours spent at this stage were not facially outlandish.  They fall short of the hours claimed by the firm in cases where courts have imposed greater percentage reductions."  *J.P.*, 2023 WL 2447264, at *11 (collecting cases).  The Court accordingly will reduce fees at the federal litigation stage by 15%.

Defendant, however, argues that Plaintiff is not entitled to all of its fees incurred during the federal litigation stage.  Dkt. No. 25 at 23.  That is because on June 3, 2022, DOE made a formal, good faith offer pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(D), of $17,000, via email. Dkt. No. 37-2.  In that email, Simone Nicholson of DOE stated: "Happy to report that I can convey an offer from defendant to resolve this case for $17,000.  As you know, this was just reassigned to me a little more than a week ago and I was successful in my efforts to get this expedited, and I'm actually surprised that I was able to get this much progress so quickly."  *Id.* at ECF p. 1.  Nicholson further stated: "Also, please let me know if you'll consent to adjourn the briefing schedule by two weeks to give us time to get the case settled, and also commit to suspend work on the motion."  *Id.*  Five days later, on June 8, 2022, Kopp responded: "While Plaintiff is not currently interested in putting off completion of the motion, she remains open to a good faith offer from DOE.  Plaintiff does not anticipate seeking any expedition of the briefing schedule.  This should be ample time—indeed, two additional weeks—for DOE to resubmit to the Comptroller."  Dkt. No. 37-3 at ECF p. 1.

Section § 1415(i)(3)(D) is titled "[p]rohibition of attorneys' fees and related costs for certain services" and states:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
>
>> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure[11] or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>>
>> (II) the offer is not accepted within 10 days; and

---

[11] Federal Rule of Civil Procedure 68, in turn, provides that such an offer must be served on an opposing party at least fourteen days before the date set for trial.  There does not appear to be a dispute here that the offer of settlement was timely.

> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D).  An exception exists to this general rule where "a parent who is the prevailing party" was "substantially justified in rejecting the settlement offer."  *Id.* § 1415(i)(3)(E).  DOE argues that Plaintiff is not entitled to any fees after the date of the settlement offer because the total amount of fees and costs the Court is prepared to award up to that date— approximately $14,500—is less than the $17,000 offer.

Plaintiff first argues that this rule does not apply because an informal email sent to counsel fails to qualify as a 20 U.S.C. § 1415(i)(3)(D) offer.  In support of this argument, Plaintiff cites to a footnote in a case from this District in which the court stated that an email from counsel does not qualify as an offer of settlement under 20 U.S.C. § 1415(i)(3)(D) where "it does not even mention the statute."  *S.J. v. N.Y.C. Dep't of Educ.*, 2020 WL 6151112, at *6 n.12 (S.D.N.Y. Oct. 20, 2020), *report and recommendation adopted as modified*, 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021), *modified*, 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), *aff'd on other grounds*, 2022 WL 1409578 (2d Cir. May 4, 2022).  This argument is unpersuasive.  As the Third Circuit has stated: "On its face, 20 U.S.C. § 1415(i)(3)(D)(i) requires only that the ten-day offer be a 'written offer of settlement'" and, here, DOE's offer to Plaintiff "was exactly that—an offer of settlement in writing."  *Rena C. v. Colonial Sch. Dist.*, 890 F.3d 404, 413 (3d Cir. 2018).  DOE's language is also not equivocal: DOE plainly communicated that it had expedited the request for a settlement amount and was "[h]appy" to "convey an offer from defendant to resolve this case for $17,000."  Dkt. No. 37-2.  That the offer did not reference the particular statutory provision is irrelevant.  The statute says nothing about the offer needing to reference the particular statutory provision, nor would DOE necessarily think that was required where they were communicating the offer to CLF, which has substantial experience with IDEA cases and

would be aware of this provision.  The Court is also not persuaded by the footnote in *S.J.*  The district court in that case cited no authority for its position that an offer of settlement under this statute must mention the statute explicitly.  *S.J.*, 2020 WL 6151112, at *6 n.12.  And, this court can find no other case in the District or elsewhere that has adopted this or any similar holding.

Plaintiff also argues that, even if Section 1415(i)(3)(D) did apply, it was "substantially justified" in rejecting the settlement offer at the time it was made and thus is subject to the exception under Section 1415(i)(3)(E).  There is a paucity of case law in this Circuit parsing the meaning of the words "substantially justified" in the context of the IDEA.  Nearly without exception, courts in this District have barred plaintiffs from collecting attorneys' fees and costs for time incurred after an offer of settlement where the offer exceeded the amount that the court ultimately determined the plaintiff was entitled to in fees and costs through that date.  *See, e.g.*, *B.C.*, 2023 WL 2301424, at *3 (awarding no fees after date of settlement offer which exceeded amount court awarded up to that date); *M.R. v. N.Y.C. Dep't of Educ.*, 2022 WL 16575767, at *3 (S.D.N.Y. Oct. 31, 2022) (same); *K.E.*, 2022 WL 4448655, at *16 ("Thus, where the amount of fees and costs incurred through the offer of settlement date is less than the offered settlement amount, courts will not award fees for fees and costs incurred after that date."); *H.C. v. N.Y.C. Dep't of Educ.*, 2021 WL 2471195, at *11 (S.D.N.Y. June 17, 2021) (refusing to award fees post-settlement date on this basis).  *But see H.W. v. N.Y.C. Dep't of Educ.*, 2022 WL 541347, at *6 (S.D.N.Y. Feb. 23, 2022) (finding plaintiff's counsel was substantially justified in rejecting settlement offer because DOE's settlement proposal "did not amount to an offer that would have settled all issues raised in Plaintiff's complaint, but rather, only the issues involving Plaintiff's claim for attorneys' fees and related expenses").  In doing so, courts have rejected the two arguments that have been repeatedly made for substantial justification: (1) that counsel's

rejection of the settlement offer was justified because it was substantially less than the invoice amount; and (2) that counsel's rejection of the settlement offer was justified because of DOE's inclusion of a waiver of plaintiff's right to claim post-judgment interest. *See, e.g.*, *T.A. v. N.Y.C. Dep't of Educ.*, 2022 WL 3577885, at *7 (S.D.N.Y. Aug. 19, 2022); *R.P. v. N.Y.C. Dep't of Educ.*, 2022 WL 1239860, at *6 (S.D.N.Y. Apr. 27, 2022). As to the first argument, courts have noted that "where an invoice is premised on inflated billing rates and excessive hours, that invoice cannot serve as justification for rejecting a settlement offer." *N.A.*, 2022 WL 17581774, at *12. And, as to the second, courts have held that it does not qualify as substantial justification because "were [the] DOE to delay payment past the ninety-day statutory period for a municipality to pay all sums to a settling plaintiff," the plaintiff "could bring a separate action seeking an award of interest on the settlement amounts." *M.Z.*, v. *N.Y.C. Dep't of Educ.*, 2023 WL 2499964, at *7 (S.D.N.Y. Mar. 14, 2023) (citing N.Y.C.P.L.R. § 5003-a) (cleaned up). The cases have otherwise not given meaning to the language "substantially justified."

The cases have not addressed the issue presented in this case—whether every rejection of an offer that turns out to have been greater than the court awarded for time incurred up to the date of the offer was not substantially justified. The Court holds that this is not the case.

Such a rule would put counsel for the special needs student and her family in an untenable position. It would effectively require counsel to take even the most lowball of settlement offers that DOE could credibly justify for fear that by challenging the offer, counsel would lose not only the offer but also the fees incurred in showing why the offer was unreasonable. As it is, plaintiff's counsel who turns down an offer and decides to litigate the question of attorneys' fees takes substantial risk, with some courts awarding the requested rates, *see Y. G.*, 2022 WL 1046465, at *2, and others reducing them substantially, *see K.L. v. Warwick*

*Valley Cent. Sch. Dist.*, 2013 WL 4766339, at *1 (S.D.N.Y. Sept. 5, 2013), *aff'd*, 584 F. App'x

17 (2d Cir. 2014) (reducing total request fees from around $27,000 to around $3,000).  Such a

rule also would be inimical to the principle that civil rights attorneys act as private attorneys

general, both when they litigate the underlying merits of their client's case and when they litigate

the right of the bar to a reasonable attorney's fee.  *See M.H.*, 2021 WL 4804031, at *21; *D.B. ex*

*rel. S.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 6831506, at *6 (S.D.N.Y. Apr. 22, 2019).

Such a rule also is not commanded by the statutory language and is inconsistent with it.

As noted, Section 1415(i)(3)(E) carves out an exception to § 1415(i)(3)(D) where "a parent who

is the prevailing party" was "substantially justified in rejecting the settlement offer."  *Id.*

§ 1415(i)(3)(E).  In analogous contexts, the Supreme Court and other courts have determined that

the language "substantially justified" imposes a "reasonableness" standard.  *See, e.g.*, *Pierce v.*

*Underwood*, 487 U.S. 552, 566 n.2 (1988) (interpreting the phrase in the context of the Equal

Access to Justice Act ("EAJA") stating "a position can be justified even though it is not correct,

and we believe it can be substantially (*i.e.*, for the most part) justified if a reasonable person

could think it correct . . ."); *Green v. Bowen*, 877 F.2d 204, 207 (2d Cir. 1989) ("In interpreting

whether a position was 'substantially justified,' courts are to apply a standard of

reasonableness."); *Diaz v. New York Paving Inc.*, 553 F. Supp. 3d 11, 21–22 (S.D.N.Y. 2021)

(interpreting "substantial justification" in Federal Rule of Civil Procedure 37(a)(5) to mean

"justification to a degree that could satisfy a reasonable person" (citation omitted)); *Am. Stock*

*Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (same); *In re Jenkins*, 225 B.R.

29, 32 (Bankr. D. Conn. 1998) (interpreting phase "substantial justification" in the bankruptcy

code as "justified to a degree that could satisfy a reasonable person" (citation omitted)).  A

litigant thus would be "substantially justified" in rejecting a fee offer if a reasonable person, in

the same situation, would do so.  The rule does not admit of mathematical precision—rules based on what a reasonable person would do rarely admit of mathematical precision.  It calls for the exercise of judgment by the court.

Applying that interpretation of the law, the Court concludes that CLF was substantially justified in rejecting DOE's settlement offer.  At the time of the offer, CLF had incurred substantial fees, including substantial additional fees that it reasonably believed were not taken into consideration in the settlement offer.  The offer appears to have been made on billing records that, at the time of the offer, were over two months old, Dkt. No. 40-2, and, during the interim two months, CLF had performed approximately fifteen hours of additional work, including in drafting the Joint Rule 56.1 Statement.  Dkt. No. 15-2.  Although Defendant argues that certain of those fees, including an approximately $2,000 in fees incurred in preparing the Joint Rule 56.1 Statement, should be excluded from the analysis of whether CLF's conduct was substantially justified, Dkt. No. 37 ¶¶ 15–23, that argument is without merit.  Defendant's argument is founded upon the claim that the fees were incurred at a time when CLF should have known that a settlement offer was forthcoming and thus should have stopped work instead of attempting to rack up their bill.  But the evidence does not support that claim.  Dkt. No. 40-2.  The Court's scheduling order required Defendant to make a settlement offer by May 11, 2022, and the parties to meet and confer toward a Joint Rule 56.1 Statement by June 10, 2022, with summary judgment motions due on June 24, 2022.  Dkt. No. 13.  However, DOE did not make an offer on May 11, 2022.  Accordingly, with the offer weeks later, on May 27, 2022, Kopp emailed DOE to warn that he had a "tight schedule for June" and would "begin working on the fee motion this weekend, unless I have an offer."  Dkt. No. 40-2 at ECF p. 3.  DOE did not reply with an offer, or even with a suggestion that if June was busy for counsel, the parties contact the

Court.  Instead, DOE responded with an email asking CLF to hold off on briefing because the attorney (who had been newly assigned to the case) would have an offer by the end "of next week for sure." *Id.*  CLF had reason to be skeptical.  DOE appears to have disregarded a prior deadline regarding a settlement offer to Plaintiff.  CLF thus rejected the request.  As CLF put it in response, billing records had been provided on the case "two months ago," prior DOE counsel had promised an offer by May 11, 2022, and the fact that "the case was recently reassigned should have no bearing in the fact that the Comptroller's memo should have been submitted long ago." *Id.* at ECF pp. 2–3.  Kopp put DOE on notice that he was beginning work as he had stated was required for him to meet the scheduling order, representing that he would "see how quickly [he could] get a proposed Joint Rule 56.1 Statement to you with (and likely even before) the updated billing records so that we can hopefully have a good cut-off point on accrual unless/until the necessity of any reply." *Id.*  Even then, no one from Defendant suggested or submitted a filing to the Court.  CLF accordingly began working that weekend on the Rule 56.1 Statement. Dkt. No. 15-2.  A few days later, and only nine days prior to the court-ordered deadline for the parties to meet and confer on the Rule 56.1 Statement, Kopp emailed a proposed Joint Rule 56.1 statement to DOE and stated: "We are about at a point to update the billing records so the updates can be included in DOE's request for Comptroller approval.  It would, of course, be ideal to confirm that the Rule 56.1 Statement is more concrete beforehand, to, in turn, confirm a cut-off unless/until the necessity of any reply, and hopefully even get this settled before DOE's opposition becomes due." Dkt. No. 40-2 at ECF p. 2.  It was only in response to that email that DOE, two days later, made its offer of settlement.  *Id.*

Under these circumstances, it was not unreasonable for CLF to keep working on the summary judgment papers and to expect that an offer, when it was eventually made, take into

account the time counsel spent on the papers.  Counsel was complying with a court-ordered deadline.  Counsel was not required to wait until the last minute to prepare its summary judgment papers.  Nor was DOE without options if it wanted to have the clock stop on the running of attorneys' fees.  Rather than ask counsel to stop working and press counsel to leave the work to a time period when, as DOE knew, counsel was already on a "tight schedule," DOE could have contacted the Court, explained the situation, and asked for a further extension of briefing deadlines to permit it to obtain authority to make an offer and to give counsel the opportunity to consider that offer, without a court deadline looming.  DOE did not do so and thus it can hardly complain that when CLF ultimately saw DOE's offer, CLF was expecting that offer to take into account not only the time spent on the administrative matter but all time spent to date on the federal litigation.

Although this Court ultimately finds that the fees and costs Plaintiff reasonably incurred up through the offer were, in fact, slightly less than that offer, this alone, as previously discussed, is not a sufficient basis to find that Plaintiff was not substantially justified in rejecting the offer.  Even if Plaintiff could not reasonably have expected DOE's offer to be for the exact amount of its invoices up through the settlement offer (approximately $30,000) or a figure close to that amount, *see N.A.*, 2022 WL 17581774, at *12 ("[W]here an invoice is premised on inflated billing rates and excessive hours, that invoice cannot serve as justification for rejecting a settlement offer."), the invoices here were not so inflated or unjustifiable that the Court can say that it would have been unreasonable for CLF to think it could get more than the $17,000 that was offered, taking into consideration the additional time it spent over the interim two months including on the Rule 56.1 Statement.  Its invoices were based on rates of $550 for the senior attorneys, $400 for Kopp, and $225 for the paralegals.  Dkt. No. 15 ¶ 96.  Moreover, although

the majority of courts in the District historically awarded fees at much lower rates to CLF, *see supra* pp. 10–11, counsel had in hand at the time it was considering the fee offer, a decision by a respected member of this Court rendered fewer than two months earlier that awarded CLF those exact hourly rates based on new information as to what the appropriate rate should be for IDEA attorneys. *See Y. G.*, 2022 WL 1046465, at *2 ("[T]hus find that Plaintiffs' counsel are entitled to the following rates: $550/hr. for Andrew Cuddy and Jason Sterne, $450/hr. for Kevin Mendillo, $425/hr. for Justin Coretti, $400/hr. for Benjamin Kopp, $375/hr. for Erin Murray, and $225/hr. for all paralegals.").  It was not unreasonable for CLF, at the time it declined the settlement offer, to think that if other courts did not exactly follow suit,[12] they might not be far behind.  In addition, the hours billed on the invoices in this case, although high, were not so excessive or inflated that CLF should have known that they would be cut substantially.  To the contrary, the Court finds that haircuts of only 20% on the hours billed during the administrative phase and 15% on the hours billed during the federal litigation are appropriate.

Under these circumstances, where the offer was made without taking into account significant work that CLF had performed, including on the summary judgment papers, and where the offer that was rejected was only $2,500 higher than the amount that the Court has awarded for the time up to that date, CLF was substantially justified in rejecting the offer and in taking its chances that while it might be awarded less as a result of the federal litigation, it might also have been awarded more.  The exception contained in Section 1415(i)(3)(E) thus applies here and

---

[12] This Court had also, days prior to the settlement offer, issued a decision awarding certain attorneys at CLF higher reasonable hourly rates than it finds appropriate here—although not as high as those awarded in *Y.G. See K.O.*, 2022 WL 1689760, at *9 (awarding Andrew Cuddy $420 an hour and Kopp $250 an hour).

Plaintiff is not barred from collecting any fees and costs incurred after June 3, 2022.  The Court therefore awards Plaintiff the following amounts in attorneys' fees for the federal litigation:

| Timekeeper | Reasonable Rate | Reasonable Hours | Total |
|---|---|---|---|
| Andrew K. Cuddy | $400 | 4.93 | $1,972.00 |
| Benjamin Kopp | $225 | 34.34 | $7,726.50 |
| Benjamin Kopp (Paralegal Time) | $100 | 2.04 | $204.00 |
| Shobna Cuddy | $125 | 1.53 | $191.25 |
| Total | | | $10,093.75 |

## II.    Costs

Plaintiff seeks costs of $7.50 for the administrative phase (comprised of $4.00 for copies at $0.10 per page and $3.50 for postage)[13] and $402.00 for the filing fee for the federal litigation. Dkt. No. 15 ¶ 96.  All of these costs were incurred prior to the offer of settlement and thus 20 U.S.C. § 1415(i)(3)(D) does not apply.

A district court may award reasonable costs to the prevailing party in IDEA cases.  *See* 20 U.S.C. § 1415(i)(3)(B); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C.*, 2021 WL 2471195, at *11 ("A district court may award reasonable costs to the prevailing party in IDEA

---

[13] Plaintiff argues that CLF's request for printing costs should be reduced to $.10 per page instead of $.50 per page and that CLF should not be able to recover $6 for faxing.  Dkt. No. 25 at 30.  However, contrary to these contentions, CLF does not request $6 for faxing and requests only $.10 per page for printing costs. Dkt. No. 15 ¶ 96.  In any event, a fee of $.20 per page for printing costs would have been justified.  *See M.H.*, 2021 WL 4804031, at *27 ("The Court finds that twenty cents per page is a reasonable figure for copying costs and will award costs at that rate."); *see also K.E.*, 2022 WL 4448655, at *18 (same).

cases.") (quoting *C.D.*, 2018 WL 3769972, at *12); *S.J.*, 2021 WL 100501, at *5 (stating the same).  The costs, here, are reasonable and are approved.

## III.   Interest

Plaintiff is not entitled to prejudgment interest as the Court used current rates in calculating reasonable attorneys' fees, *see M.H.,* 2021 WL 4804031, at *31,[14] but is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff is awarded $20,489.75 in attorneys' fees, $409.50 in costs, as well as post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk of Court is respectfully directed to close Dkt. No. 14.


SO ORDERED.

Dated: March 30, 2023
     New York, New York
                                        LEWIS J. LIMAN
                            United States District Judge

---

[14] Plaintiff relies on *S.J.*, 2022 WL 1409578, at *1, for the proposition that prejudgment interest is awardable under the IDEA.  The Second Circuit stated that there it did not find "any basis to disturb the district court's determination that, 'assuming the Court has discretion to award prejudgment interest, the Court agrees with the [R&R] that Plaintiff is adequately compensated by the award as modified.'"  *Id.* at *1 (citing Special App'x at 43).  The Circuit Court clearly did not hold that prejudgment interest was available under the IDEA.